172460. And I understand that Ms. Lispon is here. Good morning, Your Honors. My name is Amy Nussbaum-Gell, and I represent the petitioner Mohamed Tahir. Mr. Tahir was actually removed from the United States during the pendency of this petition for review, and that happened in early 2018. And this petition for review is based on a denial of a motion, a motion to reopen based on changed circumstances, changed country conditions in Pakistan. And in that regard, we submitted new evidence that could not have been discovered in 2012 at the time of his, he lost his case, because there was a new government of Musharraf who came in, and the respondent became more political at that time. And there was an increase in ISIS in the country, and ISIS rose up. And in fact, ISIS had issued fatwas and was murdering journalists and repressing journalists and repressing media people, which Mr. Tahir was a media person. And also, there was evidence that Nawaz was repressing media people. And this is very relevant to Mr. Tahir because he worked for, he began working for a television station, TV One, which has television broadcasts throughout the United States and Canada and also is widely disseminated throughout Pakistan. And in 2016, 17, there were a lot of television shows. For example, there was a show on the Panama Leaks, which exposed the corruption of Nawaz Sharif, who was then the President, and that ultimately led to his being convicted and going to jail. There were also television shows that were directly insulting Sunni, insulting religious fundamentalists in Pakistan in terms of insulting Sharia laws, talking about women's rights, talking about the practice of holidays in America. And a lot of threats were issued to Tahir, even here over the phone before he was deported, that he should stop this. And there were also threats that he should stop his rights in Pakistan. Now, in support of this motion, we put in newspaper articles and country reports and amnesty reports. We also put in a detailed affidavit of the respondent talking about all his new activity and his new fears, along with an affirmation from his attorney, swearing to the content and swearing to having knowledge and explaining how he developed the knowledge by going to the detention center and speaking with the families. And the reason that an affirmation was put in, rather than the sworn statement, was because of the very short window of time. Mr. Tahir had been rearrested and they were trying to move him out of the country, and there was a very short time and they were moving him between jails. So the BIA erred in saying that this didn't count as evidence, because it ignored your the decision of the Second Circuit in Kulhawic, 2009, which said that an attorney affirmation in a motion to reopen, those statements do count as evidence. The only thing that doesn't count as evidence and wouldn't be evidentiary is if the statements are in an attorney's brief. And the BIA misquoted that in its argument. Moreover, in this case, the ‑‑ in this case, there was a negative credibility finding, but it was very, very limited, and it didn't relate in any way to these new predicate facts. The credibility finding was merely that Mr. Tahir, that Sunni extremists had not injured ‑‑ had not chased and attacked Mr. Tahir in Pakistan when he was 19 or 20 years old in ‑‑ from between 1991 and 1993. There was no other mention of anything else. When he got to the United States after 1994, he became a liberal activist, a completely secular individual who promoted secular activities, somebody who supported the stopping of fundamentalism and terrorism in Pakistan by his support of Musharraf. And in the early ‑‑ in the ‑‑ and then after his case, as I said, between 2012 and 2017 when he was deported, these activities increased. They became highly political, and they were under a new Nawaz Sharif government and a new establishment and ISIS was present in the country. So none of the findings in the other ‑‑ in the credibility finding had any relation to this predicate set of facts or to these new facts or his new fear, and that would be ‑‑ that's a matter of Paul v. Gonzales. Kennedy. Can I go back to earlier you said that the change conditions are increased danger for journalists and media persons. Mr. Tahir, as I understand it, is a very graphic designer, basically, a computer graphic person, and he applied those skills at a television station that has a particular political viewpoint and so on. Is that right? This is true. He did all of the graphic design and all of the media work, but his picture was on all ‑‑ was in every show, and he was named in every show, and everyone knew he was involved in it. He also ‑‑ The evidentiary basis for that is the attorney affirmation that says that his name appears in the credits and his picture is on the ‑‑ There was also a media kit that was put in from the organization. I see. And we have that? Yes. Okay. And furthermore, the BIA really abused its discretion in this case by not giving any reasonable analysis or any analysis whatsoever of why this evidence didn't constitute change country conditions. They also ‑‑ they also said ‑‑ they also erred in saying that in our motion to reopen, we didn't address the fact that the Second Circuit had previously held that Mr. Tahir was not eligible for withholding on Kat, and presumably on the terrorist bar. And that's not true at all, because we pointed out to the BIA that we were applying for deferral of removal under Kat. You know, Kat is a twofold request. One is for withholding of removal. You have the benefit of your argument on that. What? You have reserved three minutes for rebuttal. Is that correct? Okay. So let's hear from the government. Good morning. May it please the Court. Alison Igo representing the Attorney General. In this case ‑‑ this case is about a motion to reopen. In order to overcome the time limitation, this motion was filed three years late. In order to overcome that, Mr. Tahir had to show change country conditions. He put in several articles, one of which was an Amnesty International article, and I would direct the Court's attention to the administrative record page 46. Even in that article from Amnesty International, it talks about there having been 49 killings of journalists and media personnel since 2001. So Mr. Tahir arrived here in 2007. His immigration hearing was in 2012. This is simply a continuation of the prior violence, even with the change in administration in Pakistan. And the Court did not abuse its discretion, given that evidence, in finding that there were no change country conditions. Second, the Court also found that Mr. Tahir did not make a prima facie case. The counsel referred to this media kit. When you take a look at the media kit, which was attached to his motion to reopen, nothing in that refers to Mr. Tahir. There's no photo of him. There is nothing that shows that he's on the credits, although he makes that statement that he was. He also proffers in his unsworn, undated and unsigned statement that his brother received these calls. There's no affidavit from his brother, no statement, no letter, nothing in this case. The rule specifically states that in order to show a prima facie case for a motion to reopen, Aid U.S.C. Section 1229A.C.7b, that the movement put in either an affidavit or other evidentiary material. The other evident — there was no affidavit. The other evidentiary material does not support Mr. Tahir's claims in this case. Finally, the Board found that Mr. Tahir did not address the — its prior finding, which this Court upheld, that he engaged in material support of a terrorist organization, which would bar him from asylum and withholding. So the only thing that he would have been eligible for on his motion would have been deferral of removal under CAT. So — and the Court found that nothing in the evidence showed that — I mean, to be eligible for protection under the Convention against Torture, you have to show that you — there is a likelihood of you being tortured by a government authority or with the acquiescence of a government authority. There's nothing in this record that supports that contention. If the Court doesn't have any further questions, I would ask that the petition be denied. Breyer. You have some rebuttal time, Mrs. Baum. You don't have to use it. As I said, there was a — there's a time constraint on this motion to reopen. It happened very quickly. He was being moved. The statements that we put in news articles, which is objective evidence of torture, and that's what you need for a torture convention claim, we put that in along with a roadmap of his new activities and the threats to him, and the threats to him, and talked about the threats that were made to him in Pakistan even when he was in jail. And if you're not able to get all of that proof in a limited time, your statements, your sworn statements Why is — why is — I don't understand the limited time. He had all the time for three years to do this. You're saying the only time he decides that I guess I'd better start moving to reopen is not when conditions get difficult in Pakistan. It's when the agency starts to move against me. But he could have at any time during those three years put together this application if he thought it was appropriate and desirable to do so, right? Well, at the — you know, actually, the situation with the Pakistan leaks occurred just at the same time that the respondent was picked up, and this was a very serious matter. And there were other matters that occurred just in 2017, just around the time that he was picked up. So this was all new evidence. You're saying the change in conditions takes place in 2017 at around the same time that this application is filed? It was 2016 or 2017. 2016. Plus, when — as soon as — when he was arrested, people in Pakistan found out, and there were threats that were issued to his brother and to his family, and the family corroborated that. So because they said, oh, he's coming back, we know he's going to be coming back, and they issued threats to him. So the whole thing emerged in that way. And the family corroborated that in what way? It's in the record? The family corroborated that in the statements that were attached to his affidavit and my affirmation, which made it evidenced. His affidavit? I thought the government suggested that this affidavit was an unsworn, unsigned statement. That I — it was an unsworn — it was an unsigned statement because he was in jail and he was being moved. But an attorney affirmation — in my attorney affirmation, I explain — I explain how I got the knowledge, how I got the knowledge, what it was based upon. And in Kulhawak, this Court has ruled that that has evidentiary values. So the affirmation, in a sense, was incorporating the evidence in the record. Ms. Nussbaum, it would be best if you would arrive before 10 a.m. when we start our oral argument. You were late. Hopefully, that won't happen again, but I thank you for your time. We'll reserve decision, and court is adjourned.